January 24, 1979

**79-8    MEMORANDUM OPINION FOR THE
ASSISTANT ATTORNEY GENERAL FOR
ADMINISTRATION, OFFICE OF
MANAGEMENT AND FINANCE**

**Federal Grant and Cooperative Agreement Act of
1977 (41 U.S.C. § 501 *et seq*.)—Application to the
Department of Justice—Drug Enforcement
Administration—21 U.S.C. § 872(a)(2)**

This is in response to your request for our opinion concerning the application of the Federal Grant and Cooperative Agreement Act of 1977 (FGCAA), Public Law No. 95-224, 29 Stat. 3, 41 U.S.C. § 501 *et seq.*, to the components of the Department of Justice. Your request raises two general issues: first, the effect of the Act on the general authority of the Department of Justice to enter into contracts, grants, or cooperative agreements, and second, the extent to which the Attorney General has delegated authority derived from the Act and to the components of the Department. It then raises the particular question whether the Act and Department regulations authorize the Drug Enforcement Administration (DEA) to enter grant agreements with State and local governments under 21 U.S.C. § 873(a).

We understand that DEA intends to provide State and local governments with "seed money" to establish investigative units that will concentrate on particular types of violations. DEA has suggested that it is authorized to provide such assistance as a cooperative arrangement under 21 U.S.C. § 873(a)(2) and that § 7(a) of the FGCAA permits it to use a form grant agreement in doing so. We conclude that DEA lacks authority to provide assistance under 21 U.S.C. § 873(a)(2) by grant, notwithstanding the FGCAA. We have also concluded, however, that 21 U.S.C. § 872(a)(2) and the FGCAA authorize DEA to fund experimental enforcement projects by State or local agencies through either a grant or a cooperative agreement.

As a preliminary matter, we note that the FGCAA applies to "executive

agencies," which it defines as the executive departments, independent establishments, and wholly owned Government corporations.[1] Thus, the Act applies to the Department of Justice as an entity. With exceptions not relevant here, the functions of the Department are vested in the Attorney General, subject to delegation.[2] Therefore, the powers and duties under the Act are conferred upon the Attorney General.

The Act declares in effect, that three types of legal instruments can embody the relationship between a Federal executive agency and the recipient of Federal assistance or a procurement contract: the contract, the grant agreement, and the cooperative agreement.[3] Sections 4–6 of the Act, 41 U.S.C. § 503–505, define the type of relationship between an agency and the recipient in which each instrument will be used. Section 7(a) of the Act, 41 U.S.C. § 506(a), authorizes the agencies to enter into the type of agreement that is appropriate to the agency's underlying relationship with the recipient. The text and legislative history of the Act demonstrate that it does not change the substantive authority of agencies to enter particular relationships with recipients; it merely requires them to use the proper legal instrument in the exercise of that authority.

The Act requires a procurement contract to be used "whenever the principal purpose of the instrument is the acquisition, by purchase, lease, or barter, of property or services for the direct benefit or use of the Federal Government."[4] Assistance, as opposed to procurement, requires either a grant agreement or cooperative agreement. In both cases, a relationship exists where:

> * * * the principal purpose of the relationship is the transfer of money, property, services, or anything of value to the State or local government or other recipient in order to accomplish *a public purpose of support or stimulation authorized by* Federal statute* * *. [Emphasis added.][5]

A grant agreement must be used when "no substantial involvement" by the Federal agency in the recipient's activity is anticipated;[6] a cooperative agreement must be used when "substantial involvement" is anticipated.[7]

The purpose of these provisions is to provide uniform, Government-wide criteria for selecting a legal instrument that will reflect the type of basic relationship expected between the Federal Government and non-Federal parties.[8] Taken together, they "provide a basic structure that

---

[1] 41 U.S.C. § 502(4); *see* 5 U.S.C. §§ 101–105.

[2] 28 U.S.C. § 509, 510; *see also* 21 U.S.C. § 871.

[3] The Act does not apply to direct cash assistance to individuals, subsidies, loans, loan guarantees, or insurance. 41 U.S.C. § 502(5).

[4] 41 U.S.C. § 503.

[5] 41 U.S.C. § 504(1), 505(1).

[6] 41 U.S.C. § 504(2).

[7] 41 U.S.C. § 505(2).

[8] S. Rept. 449, 95th Cong., 1st sess., 2, 7 (1977). *See also* Federal Grant and Cooperative Agreements Act, Pub. L. No. 95–224, § 2(b)(2); 123 CONG. REC. H. 10159–60 (Sept. 27, 1977).

expresses existing relationships between the Federal Government and non-Federal entities."[9]

The powers conferred by § 7(a) of the Act, 41 U.S.C. § 506(a), must be understood in this context. Section 7(a) provides:

> Notwithstanding any other provision of law, each executive agency authorized by law to enter into contracts, grant or cooperative agreements, or similar arrangements is authorized and directed to enter into and use types of contracts, grant agreements, or cooperative agreements as required by this Act.

On its face, the section permits and directs any agency to use the type of instrument which the preceding sections have declared appropriate to the type of relationship the agency is entering. As the Senate committee report on the bill explains, agencies may have previously been statutorily restricted to a type of instrument that did not accurately reflect the nature of the relationship. The authority given by § 7(a), it continues, "will provide the executive agencies with needed flexibility in their efforts to use appropriate legal instruments to reflect the relationships established with non-Federal recipients."[10] In other words, § 7(a) gives the executive agencies authority to comply with the criteria of §§ 4–6.

Sections 4–6, however, do not alter the substantive power of the agency to enter a particular type of relationship. Instead, they require the use of grant or cooperative agreements only when the agency is "authorized by Federal statute" to provide support or stimulation.[11] As the legislative history repeatedly points out, their purpose is to require the form of the agreement to reflect the substance of the relationship.[12] It follows that the Act does not confer on the Department of Justice new authority to procure property or services, make grants, or cooperate with non-Federal entities. Rather, it authorizes and directs the Department to use the correct legal instrument to carry out its authorized functions. Where the Attorney General has delegated his authority to procure or to enter cooperative relations, it would be consistent with the purpose of the Act to read into the delegation the power and duty to use the appropriate instrument provided by § 7(a).

Applying these principles to DEA, it is apparent that § 7(a) has not given DEA authority to use grant agreements to implement a program under 21 U.S.C. § 873(a)(2). The latter statute provides:

> The Attorney General shall cooperate with local, State, and Federal agencies concerning traffic in controlled substances and in suppressing the abuse of controlled substances. To this end, he is authorized to—
>
> * * * * * * *

---

[9] S. Rept. 449, 95th Cong., 1st sess., 10 (1977).

[10] S. Rept. 9, 95th Cong., 1st sess., at 10 (1977).

[11] 41 U.S.C. §§ 504(1), 505(1).

[12] *See* S. Rept. 449, 95th Cong., 1st sess., 2, 7–8, 10 (1977); 123 CONG. REC. H. 10159–60 (Sept. 27, 1977).

(2) cooperate in the institution and prosecution of cases in the courts of the United States and before the licensing boards and courts of the several States* * *.

The Attorney General's authority under it has been delegated to the Administrator of DEA.[13] The relationship which this statute authorizes DEA to enter is a cooperative one—*i.e.,* mutual involvement and assistance in a matter of common concern. There is nothing in its legislative history or, insofar as we are aware, in its previous application, that would authorize DEA to provide simple financial assistance to state or local law enforcement agencies. Accordingly, the effect of § 7(a) is not to permit DEA to provide such assistance through grants, but rather to require it to provide otherwise permissible assistance in the form of a cooperative agreement.

There is, however, other statutory authority for DEA to make grants to State or local law enforcement agencies for limited purposes. Under 21 U.S.C. § 872(a)(2) DEA is authorized to conduct research programs relating to controlled substance law enforcement, including "studies or special projects designed to compare the deterrent effects of various enforcement strategies on drug use and abuse."[14] Under 21 U.S.C. § 872(b), contracts for such research are authorized. The statute contemplates that research will be performed by persons outside the Federal Government.[15] State or local law enforcement agencies are logical bodies to conduct a special project testing new enforcement methods. We are therefore of the opinion that the Act permits DEA to provide them with funds in order to conduct a limited test of a new enforcement strategy. Since the underlying authority to enter a financial relationship with these agencies for enforcement research exists, the Federal Grant and Cooperative Agreement Act permits and requires DEA to use the type of legal instrument that accurately reflects the purpose of the relationship. Depending on the specific circumstances of the project, this would be either a grant or cooperative agreement.

MARY C. LAWTON
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[13] 21 U.S.C. § 871(a); 28 CFR §§ 0.100(b), 0.101(a).

[14] We note that the Department of Justice Appropriation Authorization Act, § 2(10), 92 Stat. 3461, authorizes appropriations for research under this statute.

[15] *See* H. Rept. 1444 (Part 1), 91st Cong., 2d sess., 24, 51 (1970).